## Sinaiko v. Sinaiko

C.P. Bucks County, no. A06-88-6115-QKY-19.

*Joel W. Todd,* for plaintiff.
*Rudolph J. DiMassa,* for defendant.

SCOTT, *J.,* January 20, 1995—Peter Sinaiko, M.D., "husband," has appealed our December 9, 1994 order

finding him in contempt of our February 18, 1994 order which directed that husband pay $39,936 in counsel fees to his former wife, Patricia Sinaiko, "wife." Under our December 9, 1994 order, husband was remanded to the Bucks County Prison for a period of 14 days with a purge condition of the payment of $39,936. This opinion is written in support of our December 9, 1994 decision.

The history of this case is as follows: On October 1, 1990, at the time of an equitable distribution hearing scheduled before the undersigned, the parties entered into a property settlement agreement. The terms of the agreement were incorporated into a divorce decree granted on October 5, 1990. Contempt petitions followed on November 14, 1990, January 22, 1991, May 23, 1991 and December 16, 1991 for husband's noncompliance with the economic terms of the agreement. These economic terms related to the equitable distribution aspects of the agreement and certain support related matters of the parties' two children, Stephen and Daniel, principally payment of Stephen's law school tuition, room and board. There was also a payment for Daniel's summer expenses. This issue regarding Daniel was a very minor component of the contempt proceedings.

The last contempt petition resulted in the order of May 6, 1992 directing husband to pay approximately $41,000 to wife, principally for Stephen's law school expenses. When husband did not comply with the terms of the May 6, 1992 order, wife reduced the order to judgment and issued a writ of execution with the sheriff which

resulted in the attachment of husband's Porsche. After the Porsche was attached, husband did resolve the matter, withdrew his appeal of the May 6, 1992 finding and the parties resolved all outstanding financial issues except the issues of payment of counsel fees for husband's prior noncompliance. There was a series of hearings on the issue of counsel fees, which resulted in our February 18, 1994 order. Husband appealed said order, but it was untimely, and as a result the appeal was quashed.

The February 18, 1994 order referred to paragraph 17 of the parties' October 1, 1990 separation agreement, which stated that legal fees would be assessed against the party found to have breached the separation agreement. The February 1994 order assessed legal fees for noncompliance with the equitable distribution and certain support terms of the parties' 1990 agreement, not for payment of counsel fees for representation during the divorce proceedings. After husband's appeal of the February 1994 order had been quashed, wife reduced the order to judgment and made at least two attempts to satisfy the judgment. The first attempt was to attach the Porsche, a maneuver which had merited husband's attention in the prior proceeding. At this point, husband managed to resist such attachment since the Porsche had been transferred into joint names with himself and his current wife in June 1994. The second attempt was to have Blue Cross/Blue Shield reimbursements which were due to husband's medical practice paid to wife to satisfy the judgment. While there was not testimony on this point, by representation of the attorneys, it appears Blue Cross/Blue Shield took the position that the payments were due to husband's

professional corporation, not to husband individually, and such payments could not be diverted to satisfy a judgment of this nature. The third attempt to satisfy the judgment is the subject of the instant petition. In the instant petition, wife's attorney requested that husband's stock in his professional medical corporation, of which he is the 100 percent shareholder, be transferred to wife until the judgment is satisfied or, in the alternative, that husband be remanded to the Bucks County Prison until the judgment is satisfied. The hearing on the petition was held on December 9, 1994. Counsel made argument on the issue of attaching husband's stock. We agreed with husband's attorney that stock in a professional corporation can only be held by the appropriate professionals, such as a physician, and, therefore, this remedy was unavailable to wife. We, therefore, heard testimony from husband as to his present ability to pay the order and wife's testimony as to husband's statements to her regarding such payment.

Wife first testified that after she received this court's February 19, 1994 opinion, she contacted husband and essentially asked him if they could work out a resolution with the hope of keeping the lawyers out of it. She also indicated to him that she would accept partial payments toward the obligation. She stated that husband's response was that he was not going to pay her anything and he did not care what the court said.

Husband's position at the December 1994 hearing was that he could not afford to pay anything toward the counsel fees, even when this court asked what plan he would propose in an effort to meet the obligation. His plan was to pay nothing until his obligation for his son, Daniel, was completed in three years, when Daniel completed

college. Husband indicated that his income was down from the $300,000 to $400,000 personal gross at the time of the 1990 agreement to $160,000 personal gross in 1993. In support of this position, husband provided only the first two pages of his 1993 1040 personal tax return. He did not provide a professional corporate return, even though this had specifically been requested by wife's counsel. To show that his expenses were extraordinary, husband produced exhibit R-4, showing that he owed approximately $26,000 in income tax. This was income tax for the 1993 tax year and on his alleged income of $160,000 he had only paid $15,000 in taxes even though approximately $40,000 was due based on the return. Husband further produced exhibit R-2 which indicated that by his accountant's calculation he had to expend $69,000 in pre-tax money for his son, Daniel, for his obligations under the 1990 property settlement agreement. However, it is not disputed that the real yearly outlay is approximately $26,000 for Daniel's college, plus about $13,000 in child support until Daniel is 21. Husband further indicated that he paid approximately $2,800 per month for his mortgage and that his mortgage was current. When asked by the court, regarding some of the assets that he had at the time of equitable distribution, he indicated that he had been taking money from his pension fund to pay various expenses related to his son, Daniel, and that he had approximately "$30,000 total" (N.T. p. 88) left. Again, no documentation was provided. Husband's lawyer objected to questions regarding the pension fund, asserting that the court could not make husband withdraw money from his pension to pay the counsel fees.

On appeal, husband asserts the following issues:

(a) Defendant/petitioner, appellee/wife herein, failed to present sufficient evidence to sustain a finding of willful disregard of the order dated February 18, 1994 to pay counsel fees under the property settlement agreement;

(b) The trial court incarcerated appellant/husband in violation of 42 Pa.C.S. §§4132 and 4133;

(c) The trial court incarcerated appellant/husband in violation of the United States Constitution; and

(d) The trial court abused its discretion by incarcerating appellant/husband for nonpayment of counsel fees under a property settlement agreement.

The first issues we will discuss are b and c, which essentially alleged that it was illegal for this court to put husband in prison because of his noncompliance. In particular, he asserts that the imprisonment violates 42 Pa.C.S. §§4132 and 4133 and the U.S. Constitution. We initially will note that the allegation that we have violated the Constitution is too broad to permit a specific response. However, we will address the question of whether our order violated 42 Pa.C.S. §§4132 and 4133. Section 4132, *Attachment and Summary Punishment for Contempts* provides as follows: "The power of the several courts of this Commonwealth to issue attachments and to impose summary punishments for contempts of court shall be restricted to the following cases:

"(1) The official misconduct of the officers of such courts respectively.

"(2) Disobedience or neglect by officers, parties, jurors or witnesses of or to the lawful process of the court.

"(3) The misbehavior of any person in the presence of the court, thereby obstructing the administration of justice."

Title 42 Pa.C.S. §4133 provides as follows:

"Except as otherwise provided by statute, the punishment of commitment for contempt provided for in section 4132 shall extend only to contempts committed in open court. All other contempts shall be punished by fine only."

We find these provisions are not applicable in the instant case because there is specific statutory authority for incarcerating husband under the circumstances of this case.

The equitable distribution section of the Divorce Code at 23 Pa.C.S. §3502(e) describes powers of the court and states in relevant part:

"If at any time a party has failed to comply with an order of equitable distribution as provided for this chapter *or with the terms of an agreement as entered into between the parties,* after hearing, the court may, in addition to any other remedy available under this part, in order to affect compliance with its order....

"(6) issue attachment proceedings, directed to the sheriff or other proper officer of the county, directing that the person named as having failed to comply with the court order be brought before the court, at such time as the court may direct. If the court finds, after hearing, that the person willfully failed to comply with the court order, it may deem the person in civil contempt of court and, in its discretion, make an appropriate order, including,

but not limited to, commitment of the person to the county jail for a period of not to exceed six months;

"(7) award counsel fees and costs...." (emphasis added)

Therefore, this section alone gives sufficient authority to enforce economic provisions of agreements between the parties by various sanctions, including jail.

Additionally, the Divorce Code at 23 Pa.C.S. §3105(a) gives the court the authority to utilize any remedy or sanction available within the Divorce Code to enforce any agreement between parties regardless of whether or not the agreement had been merged into the decree.

Section 23 Pa.C.S. §3105(a) states in relevant part:

"A party to an agreement regarding matters within the jurisdiction of the court under this part, whether or not the agreement has been merged or incorporated into the decree, *may utilize a remedy or sanction set forth in this part to enforce the agreement* to the same extent as though the agreement had been an order of the court except as provided to the contrary in the agreement." (emphasis added)

Obviously section 3502(e) relating to noncompliance with an equitable distribution order, when read together with section 3105(a) enforcing an agreement by remedy or sanction available under the Divorce Code, provides for enforcement of the economic terms in an agreement, as though by order of court. The fact that the parties entered into an agreement providing a mechanism for counsel fees as a remedy for noncompliance is the same under 23 Pa.C.S. §3105 as if the court directed that counsel fees be paid. The support provision in the Sinaiko agreement, which was the subject of the May 1992 order,

involved payment for Stephen's law school tuition, room and board. This type of provision is not in the nature of a child support order, since it involved graduate school, but is more properly considered simply an economic term of the agreement and, therefore, enforcable under section 3502(e).

It should also be noted that counsel fees are a typical remedy for noncompliance with economic terms of a separation agreement and unless the court has the ability to back the counsel fee order with the potential of incarceration for nonpayment, such order does not have significant legal effect.

The second issue raised by husband is that wife did not meet her burden of proving willful disregard. We note initially that we find wife's testimony credible that husband indicated he would not pay, no matter what the court said. Husband said he told wife that he did not have the money to pay it and that there was an appeal under consideration.

We found, by his own testimony, that husband does have the present ability to pay. He has approximately $30,000 in the pension fund that he can access and expend. When asked by the court whether he ever considered paying the obligation out of the remaining $30,000 in the pension, husband responded that "Those funds are basically untouchable." The court then asked: "The court: Well, if I understand your testimony, you've touched them. The witness: With great reluctance.... In order to pay my son's school tuition and pay off other obligations to Patricia Sinaiko." (N.T., p. 89, lines 2-8.) Between the $30,000 available from his pension and any sums from even his

stated income of $160,000, husband has sufficient funds to meet the purge.

Further, he did not begin to meet his burden on showing that he has a reduction in income even to his stated level of $160,000. He did indicate that his professional practice paid for trips to conferences to keep his certification in the area of urology current but no details were provided as to what, if anything, is being paid by his professional corporation; such payment clearly benefits husband and may be additional compensation. He only provided the first two pages of what purports to be his personal income tax return. He did not provide any detail as to the $32,000 in claimed deductions on this return, even though documentation had been requested by wife's attorney prior to the hearing.

Husband introduced copies of an MBNA America Credit Card statement to purportedly illustrate the magnitude of expenses he has incurred for his son, Daniel. Upon cross-examination, it was revealed, however, that $15,000 of the approximately $17,500 balance due was incurred prior to his son having possession of the card. We believe that this exhibit and testimony demonstrates the obstructionist character of husband. Husband's attitude throughout the hearing was one of arrogance. He clearly was annoyed that the court was requiring him to be present to testify rather than practice medicine. When asked why he did not provide the financial information requested, such as the complete tax returns, his response was simply that it was in the hands of his lawyers. He indicated total disdain for the court by his response of "fat chance" (N.T. p. 69) when asked if his attorney had petitioned for reconsideration of the February 1994 order. Only when

the court entered the final order and the sheriff's deputy moved toward husband to take him into custody did he seem to realize that there was an order of court that he had to obey. His response to this court's announcement of the decision at the conclusion of the hearing was "Are you kidding me?" (N.T. p. 108.)

The final issue that husband alleges is that the court abused its discretion by incarcerating husband for nonpayment of counsel fees under a property settlement agreement. We believe husband has mischaracterized the issue, since it is not nonpayment of counsel fees under a property settlement agreement, rather it is nonpayment of counsel fees awarded for noncompliance with the equitable distribution and certain support provisions of the property settlement agreement.

Finally, husband did not offer any schedule of payment at all, even though, he is actually in a better financial situation now than he was at the time of the entry of the agreement. He no longer has to pay alimony to wife, as indicated under the agreement, because wife has remarried. And he does not have to pay for his older son, Stephen, who has graduated from law school.

Given the history of husband's noncompliance with this court's orders and his efforts to block execution on the judgment, we deemed it appropriate that he be incarcerated until he would pay the amount which we found he had the present ability to pay. If husband does not have the threat of jail, it is this court's opinion that he will not pay.

For all the foregoing reasons we entered our December 9, 1994 order.